UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
UNITED STATES OF AMERICA,        )
                                )
        Plaintiff,               )
                                )
        v.                       )
                                )      Criminal No. 03-10370
                                )
SCOTT MYERS,                     )
                                )
        Defendant.               )
_____)

**DEFENDANT SCOTT MYERS' MOTION FOR
REVOCATION OF DETENTION ORDER**

Defendant, by his attorney, hereby moves this Court pursuant to 18 U.S.C. §3145(b) to revoke the detention order entered by Magistrate Judge Collings on February 5, 2004, and order that defendant be released from custody pending trial on electronic monitoring and other conditions that will reasonably ensure his appearance as required and the safety of any other person and the community.  As grounds therefor, defendant states:

1.  Defendant has been detained since he surrendered himself to the authorities on December 4, 2003, on an indictment charging him with conspiracy with intent to distribute and to distribute marijuana in violation of 21 U.S.C. § 846.  After a hearing on January 22, 2004, Magistrate Judge Collings, relying to some extent on Congress' judgment that defendants who have probably committed serious drug felonies are dangerous and pose particularly great risks of flight, concluded that the government

had met its burden of proving that, if released, there are no conditions or combination of conditions which will reasonably assure that defendant would not be a danger to the community and which will reasonably assure his appearance when required. Detention Order, Part II.  The court did recognize that defendant had met his burden of production by proposing conditions for his release on electronic monitoring in the custody of a friend.  Id.

2.  In ordering that defendant be detained prior to trial, the court erroneously gave too much weight to defendant's alleged danger to the community and risk of flight, and insufficient weight to the proposed conditions of release which would reasonably assure the safety of the community and defendant's appearance when required.

3.  In evaluating whether a defendant is a danger to the community within the meaning of 18 U.S.C. 3142(e), a court should bear in mind the extent to which the facts of the particular case "differ in some way from the paradigm for which Congress has mandated a presumption against reasonably assuring safety without detention." United States v. Shea, 749 F.Supp. 1162, 1171 (D. Mass. 1990).  The paradigm underlying the statutory presumption is based upon the Congressional finding that "drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity," and that "persons charged with major drug felonies are often in the business of importing and

distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism." Id. at 1166, quoting from S. Rep. No. 225, 98th Cong. 2d Sess. 20, reprinted in U.S. Code Cong. & Admin. News 3182, 3203.

4. The evidence in the present case with respect to defendant deviates to such an extent from this paradigm that the statutory presumption should be accorded little weight and cannot, in and of itself, constitute the "clear and convincing evidence" that is necessary to justify detention on the basis of a danger to the community. First of all, unlike cocaine and heroin, marijuana is clearly not the type of "dangerous" drug, the distribution of which Congress believed placed the safety of the community at risk. Furthermore, on the basis of the evidence presented at the detention hearing, defendant is not even alleged to have participated in the distribution of marijuana. He is only alleged to have made some efforts to contact a person who owed a co-defendant money for marijuana for the purpose of collecting the debt. Detention Hearing Tr. at 7-14. Indeed, there is no evidence that defendant was even aware of what the debt he was allegedly collecting was for, nor is there any evidence that he had threatened to use force or other illegal means to collect the debt. Id. Thus, there is no basis to believe that defendant had the drug contacts, the resources, or

the inclination to "pose a significant risk of pretrial recidivism" in connection with drug trafficking, one of Congress' main concerns.

5.  Not only do the facts of defendant's involvement in this case fall far short of the Congressional paradigm of the large, well-financed, drug trafficking operation, but the evidence strongly indicates that if defendant were released on condition of house arrest and electronic monitoring there would be no appreciable risk that he would engage in drug activities. Defendant was not involved in any of the drug transactions in which his co-defendants are alleged to have participated, and he clearly has no assets with which to finance any such activities. As in United States v. Daniels, 2000 WL 1611124 *6 (D. Mass.), where the court released a defendant who was facing a mandatory minimum life sentence for drug offenses, stringent conditions of pretrial release can reasonably assure the safety of the community.

6.  The statutory presumption of risk of flight should likewise be given little weight in view of the extent to which the circumstances of this case deviate from the Congressional paradigm.  The presumption "reflects Congress' findings that drug traffickers often have the resources and foreign contacts to escape to other countries" and therefore "pose special flight risks."  United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st

Cir. 1985); <u>United States v. Jessup</u>, 757 F.2d 378, 386 (1st Cir. 1985)("'highly lucrative drug operations were at the center of congressional concern"). As discussed above, however, defendant was not involved in any drug activities, and it is clear that he does not have the financial resources or connections that would enable him to flee to avoid prosecution. As in <u>United States v. O'Brien</u>, 895 F.2d 810, 816 (1st Cir. 1990), defendant's "very indigence inhibits his ability to travel far."

7. Defendant's personal circumstances militate strongly in favor of pretrial release with electronic monitoring. Defendant, who is 36 years old, was born and raised in Boston. He attended elementary, middle and high school in Belmont through the Metco program, and graduated from Mario Umana High School in East Boston in 1986. All of defendant's roots are in the Boston area where both his mother and father live; prior to his arrest he had lived in Boston with his fiancé, Nichelle Sadler, for four years; and his 18 year old son lives with his mother in Mashpee. Most recently, defendant was employed by the Massachusetts Department of Recreation and Conservation at the time of his arrest. Previously, he has been employed as a youth worker by Boston Community Centers, as a laborer by the Metropolitan District Commission, as a processor for Statewide Home Buyers Group, a Dorchester mortgage company, and as promoter for Drive By Music Group. Significantly, when defendant learned that there was a

warrant out for his arrest, he surrendered himself to the authorities voluntarily.

8.   Defendant proposes that he be released to his mother, Suzanne Jackson Myers, who would act as a third party custodian. He would live with her at her home at 599 Columbus Avenue, Boston, where he would be subject to electronic monitoring.  Mrs. Myers, formerly a real estate agent and director of a non-profit organization (Rise, Inc.) is disabled and, since she is home all the time, would be in a good position to supervise defendant and insure that he does not violate any conditions of pretrial release.  Alternatively, he could live with Nichelle Sadler, his fiancé, who is the director of girls' programs at the Kennedy Foundation, at the apartment they previously shared at 405 Columbus Avenue, Boston.

WHEREFORE, defendant prays that this Court revoke the detention order of February 5, 2004, and order that defendant be released to the custody of his mother, Suzanne Jackson Myers, or his fiancé, Nichelle Sadler, on conditions of house arrest and electronic monitoring and such other conditions as the Court believes will reasonably assure the safety of the community and defendant's appearance as required.

Respectfully submitted,

/s/
_____
Jonathan Shapiro
BBO NO. 454220
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: May 6, 2004