```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

```
_____
                            )
UNITED STATES OF AMERICA,   )
                            )
     Plaintiff,             )
                            )
     v.                     )
                            )     Criminal No. 03-10370-DPW
SCOTT MYERS,                )
                            )
     Defendant.             )
_____)
```

### DEFENDANT'S SENTENCING MEMORANDUM

### Introduction

On April 28, 2004, defendant entered a plea of guilty to count one of the superseding indictment charging him with conspiracy to possess with intent to distribute and distribution of marijuana, in violation of 21 U.S.C. §846. (PSR, ¶10) The original indictment had been returned on December 4, 2003, and defendant voluntarily surrendered after arrangements had been made by his attorney on December 8, 2003. (PSR, ¶¶ 2,3) As of the date of sentencing, August 4, 2005, defendant will have been in custody for a total of approximately 20 months, the last several of which were at the maximum security prison, MCI-Cedar Junction.

### The Offender

Defendant is a 37 year old man who was born, brought up, and has lived in the Boston area for his entire life. (PSR, ¶92) He attended Boston schools through the eleventh grade, he obtained a

GED in 1989, and he has taken courses at Mt. Wachusett Community College. (PSR, ¶¶115-117)  Defendant has two sons, 18 and 19 years old, born of different relationships when he was about 18 years old, and with whom he maintains a close relationship. ¶¶ 98-100) He has had a relationship with his fiancee since the early 1990's, they have lived together at various times since 1998, and he is a constant presence in the life of her 12 year old son.  She is the Area Director of the Robert F. Kennedy Children's Action Corps, a child welfare agency that manages residential programs and community-based centers for children in DSS and DYS custody. (PSR, ¶¶101-102, 106-106a)  Defendant had a very close relationship with his mother until her death in December, 2004, of cancer.

Defendant has an extensive juvenile and adult criminal record, dating back to a delinquency adjudication for B&E at the age of 12. (PSR, ¶48)  His first commitment was to DYS in 1984 at the age of 15 for receiving stolen property, and this was followed by numerous adult commitments to the House of Correction and to state prison. (PSR, ¶¶47-71) Defendant's criminal history was, to a certain extent, related to his history of substance abuse and heroin addiction. (PSR, ¶¶60, 62, 64, 69, 70, 110-113)

## **The Offense**

Although the conspiracy charged in the superseding indictment involved the alleged distribution of thousands of pounds of marijuana over the course of approximately one year, hundreds of thousands of dollars in proceeds, a total of thirteen indicted co-conspirators in this and related cases, and relevant conduct that took place over several more years, defendant's role was limited to an attempt to collect a $26,500 debt for 18 pounds of marijuana for Kurt Walter, one of the principals of the distribution conspiracy. There is evidence that in May, late July and August of 2003, defendant had several intercepted telephone conversations with Walter and CW-1 in which they identified the debtor and provided defendant with certain information about where he might he located. (PSR, ¶22; DEA-6, 8/10/03, 8/16/03) The only thing that defendant is alleged to have actually done in connection with an effort to collect this debt was on August 23, 2003, to have unsuccessfully attempted to locate the debtor's house and to have visited a pizzeria in Framingham owned by the debtor's cousin in an effort to locate the debtor. (PSR, ¶¶ 23-24; DEA-6, 9/3/03) He never threatened the debtor and, indeed, never even spoke to, or had any contact with, the debtor. The CS reported that defendant was "very professional and polite" in a telephone conversation she had with him. (DEA-6, 5/14/03, ¶10) Defendant gave up any attempt to

locate the debtor after August 23rd, and never again even discussed it with Walter or CW-1.  While it is true that defendant was unable to locate the debtor's home because of mis-direction by CW-1, and that Walter abandoned any attempt to have defendant collect the debt after the government had CW-1 make two payments of $3000 each to Walter ostensibly because the debtor had agreed to pay off his debt in installments, this only indicates that the debtor was never in any real danger from defendant. (PSR, ¶22; DEA-6, 8/27/03, 10/4/03)

### Guideline Calculations

**A. Drug Weight Attributable to Defendant.**

The Probation Officer takes the position that defendant should be held responsible for 18 pounds of marijuana because the debt of $26,500 which he attempted to collect was alleged to have been owed for 18 pounds of marijuana. (PSR, ¶28)  This alleged weight is based upon uncorroborated information from the CW-1 (who had initially informed agents that a different amount was involved), and the government's "belief" that "CW's representation that eighteen pounds of marijuana resulted in a $26,500 debt is reasonable in light of retail prices for marijuana." (PSR, ¶19, n.1)  On this basis, the Probation Officer has assigned defendant a base offense level of 14 pursuant to U.S.S.G. §2D1.1(c)(13) since the amount of marijuana (18 pounds or 8.16 kilograms) is more than 5, but less than 10, kilograms. (PSR, ¶37)

Defendant submits that the evidence does not support this conclusion, and that in the absence of reliable evidence that it was reasonably foreseeable to defendant that the debt he attempted to collect was for 18 pounds of marijuana, he should be sentenced at a base offense level of 6, the least amount of marijuana that appears in the Guidelines Drug Quantity Table.

Under the Guidelines, in offenses involving controlled substances, the defendant is "accountable for all quantities of contraband with which he was <u>directly involved</u> and, in the case of a jointly undertaken criminal activity, all <u>reasonably foreseeable</u> quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. §1B1.3, Application Note 2.  It is true that under this Guideline "the quantity of drugs attributed to a defendant need not be foreseeable to him when he personally participates, in a direct way, in a jointly undertaken drug transaction."  <u>United States v. Chalarca</u>, 95 F.3d 239, 243 (2nd Cir. 1996); <u>United States v. Lockhart</u>, 37 F.3d 1451, 1454 (10th Cir. 1994) However, the Probation Officer is incorrect when she states that there is no need to show that the defendant in the present case had knowledge of the amount of drugs involved where it is undisputed that he had no direct or personal involvement in the actual drug transaction.  (PSR, p. 48)  Her reliance, therefore, on cases where drug couriers were held responsible for the amount of drugs that they actually transported regardless of whether they were

5

aware of the specific amount is inapposite. (PSR, p. 49)

In the present case, the 18 pounds of marijuana for which the Probation Officer would hold him accountable was not "reasonably foreseeable" to him because: (1) he was not aware of the specific amount of the debt he was attempting to collect; and (2) even if he had been aware of the amount of the debt, there is no basis for concluding that he was aware of how much marijuana was involved in the transaction that gave rise to the debt.

While the Probation Officer states that it is "unbelievable" that defendant was unaware of the amount of the debt he was attempting to collect, her disbelief is no substitute for evidence.  Defendant's role was to get the debtor to pay Walter the money he owed him, but there is no evidence that the plan was for him to actually collect the money from the debtor as opposed to simply making sure that the debtor paid Walter.  In the latter case, he would not have had to know the amount of the debt, and the evidence does not reflect that defendant was informed of the specific amount of the debt.[1]  Indeed, even though defendant is

---

[1]/ The Probation Officer states that "[t]he government indicates that while the defendant did not specifically plead to notice of additional factors, he at some point acknowledged that the debt was over $20,000." (PSR, p. 48)  The government is probably referring to the plea colloquy where defendant agreed to the statement of facts in which the government referred to the marijuana debt as over $20,000.  However, the defendant did not admit that he was aware of the amount of the debt.  In an intercepted telephone conversation on August 10, 2003, Walter is alleged to have told defendant that he thought the debt was "twenty two." (DEA-6, 8/11/03, ¶2)

alleged to have said that the debt collection was "out of Kurt's hands," when the government arranged to have payments made so as to assure the debtor's safety, the two $3000 payments were made by CW-1 directly to Walter, and not to defendant. (DEA-6, 8/27/03, 10/4/03)  Therefore, in the absence of reliable evidence that defendant was aware of the amount of the debt, there is no basis for the conclusion that he is responsible for the 18 pounds of marijuana for which the debt was owed. See United States v. Rivera-Maldonado, 194 F.3d 224, 228-229 (1st Cir. 1999)(a sentencing court's approximation must be founded upon "adequate indicia of reliability and demonstrable record support").

However, even if defendant was aware of the amount of the debt, he cannot be held responsible for a specific quantity of drugs in the absence of knowledge of the quantity of drugs that gave rise to the debt. United States v. Chalarca, 95 F.3d 239, 245 (2nd Cir. 1996)(even if the defendant was aware that $70,000 was involved in a transaction to purchase cocaine, he could not be charged with a specific amount of cocaine since he "had no idea how much cocaine could be purchased for $70,000"); United States v. Brothers, 75 F.3d 845, 852 (3rd Cir. 1996)(no evidence that defendant "could establish a correlation between the estimated sum of money and the quantity of drugs it could purchase"); United States v. Morales, 108 F.3d 1213, 1227 (10th Cir. 1997)(no quantity of cocaine was reasonably foreseeable to defendant who had laundered $831,514 drug money).  In the present

7

case, even if defendant knew that the debt was $26,500, the conclusion that an 18 pound quantity of marijuana was reasonably foreseeable to him can only be justified if he had knowledge that the retail price of marijuana was $1500 per pound, which the government contends is "reasonable." (PSR, ¶19, n.1)

As in <u>Chalarca</u>, there is no evidence that defendant actually knew how much marijuana had been sold to the debtor or that he knew how much marijuana that amount of money was likely to have purchased. <u>Id</u>. at 245. Indeed, the record shows that Walter and his co-conspirators were selling marijuana at prices from as low as $700-$800 per pound to as high as $4200 per pound. (Barton 11/15/03 Affidavit, ¶¶27, 39; DEA-6, 11/22/03, ¶2; 5/14/03, ¶5)[2] Thus, the amount of marijuana that might have been purchased for $26,500 ranges from a high of 38 pounds or 17.2 kilos (at $700 per pound) to a low of 6.3 pounds or 2.85 kilos (at $4200 per pound), a base offense level of 16 at the high end and 12 at the low end. The low end base offense level would be 10 if the $22,000 figure for the debt, based upon the 8/10/03 intercept of a telephone conversation between Walter and defendant, were used.

---

[2]/ DEA Agent Barton used the $700-$800 figure as an accurate wholesale price in the Boston area in January, 2003. (¶27) He also reports that in June, 2003, Walter had hydroponic marijuana available for a price of $3600 to $3800 per pound that could be sold for $4200 per pound. (¶39) In November, 2003, Walter told a customer that he had marijuana for sale at $800 per pound (DEA-6, 11/22/03, ¶2), and at a date which is unclear Walter told the CS that he had some "BC" marijuana which he had purchased for $3000 per pound. (DEA-6, 5/14/03, ¶5)

(DEA-6, 8/11/03, ¶2)

It is, therefore, speculative for the government to convert the amount of the debt to a drug quantity on the basis of its arbitrary choice of a retail price of which there is no evidence defendant was aware. Under such circumstances, defendant should be sentenced at the base offense level corresponding to the least amount of marijuana in the Drug Quantity Table. United States v. Chalarca, 95 F.3d at 245-46; United States v. Davis, 981 F.2d 906, 910-11(6th Cir. 1992)(sentencing judge correctly selected the lowest applicable base offense level where the government could not fairly establish the amount of drugs for which the defendant could be held responsible). Alternatively, given the ambiguity of the evidence with respect to both defendant's knowledge of the amount of the debt (no knowledge, $20,000, $22,000, or $26,500) and his knowledge of the retail price of marijuana that gave rise to the debt ($700/lb., $1500/lb., $3000/lb., or $4200/lb.), the rule of lenity requires the court to make a finding "least damaging to defendant's sentencing interests." United States v. DiMeo, 753 F.Supp. 23, 25 (D. Me. 1990); United States v. Trask, 143 F.Supp.2d 88, 92 (D. Mass. 2001)("If there is ambiguity, the the Rule of Lenity is, in effect, a tie-breaker."); see United States v. Bowen, 127 F.3d 9, 11(1st Cir. 1997). A retail price of $3000/lb. and a debt of $22,000 would result in 3.3 kilos of marijuana and a base offense level of 12. A retail price of $4200/lb. and a debt of $22,000

would result in 2.4 kilos of marijuana and a base offense level of 10.

### B. **Role in the Offense**.

The Probation Officer takes the position that defendant is not entitled to a role reduction as a minor or minimal participant in the offense of conviction under U.S.S.G. §3B1.2 because he is "only being held responsible for his personal involvement in the conspiracy." (PSR, p. 52)  However, the commentary to this Guideline specifically provides that "[a] defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline."  U.S.S.G. §3B1.2, Application Note 3(A); see United States v. Isaza-Zapata, 148 F.3d 236 (3rd Cir. 1998).

Under §3B1.2, the relevant inquiry in determining whether the defendant is entitled to a mitigating role adjustment is: (1) whether the defendant was less culpable than the average participant in the offense of conviction; and (2) whether the defendant played a part that made him substantially less culpable than the average participant in similar or comparable crimes. See United States v. Soto-Beniquez, 356 F.3d 1, 53 (1st Cir. 2004).

As the Probation Officer acknowledges, defendant is clearly less culpable than the other persons involved in the conspiracy. In a multi-member, multi-year drug distribution conspiracy that involved thousands of pounds of marijuana and hundreds of thousands of dollars, defendant had a <u>de minimis</u> role. He had nothing to do with planning and organization nor with the purchase, shipment, or distribution of the drugs; he did not exercise any decision-making authority; he did not recruit accomplices; he did not share in any of the profits of the conspiracy; and he did not exercise any control or authority over others. <u>See</u> <u>United States v. Cali</u>, 87 F.3d 571, 578 (1st Cir. 1996). Besides several telephone conversations, his only conduct was to spend one day looking for the debtor in what turned out to be an unsuccessful effort to collect a $26,500 debt for 18 pounds of marijuana. Even a cursory review of reported drug conspiracy cases also indicates that defendant's role was less culpable than the average participant in drug conspiracies and one which justifies at least a two level reduction as a minor participant. <u>See</u> <u>United States v. Mena-Robles</u>, 4 F.3d 1026, 1038 (1st Cir. 1993); <u>United States v. Innamorati</u>, 996 F.2d 456, 490 (1st Cir. 1993); <u>United States v. Jurado-Lopez</u>, 338 F.Supp.2d 246 (D. Mass. 2004).

Even when only the drugs for which defendant is being held responsible are considered, defendant is still entitled to an adjustment as a minor participant. The other conspirators, including Walter, were responsible for a course of drug dealing with the debtor over a period of time during which the transaction resulting in the debt took place. They were the ones who purchased the marijuana, shipped it to the Boston area, and distributed it to the debtor. Prior to the time that defendant was enlisted to attempt to collect the debt, Walter and CW-1 had also made efforts to obtain payment. At all times, moreover, defendant was acting solely at the direction of Walter.

C. **Uncharged Conduct**.

The Probation Officer has declined to apply an enhancement under §3C1.2 on the basis of the incident described in ¶¶25-27 of the PSR where defendant is alleged to have been involved in a collision with a police vehicle, in which no one was injured, and a high speed chase on December 3, 2002, because there is a substantial issue as to the identification of the defendant as the driver of the vehicle. (PSR, ¶30; Detention Hrg Tr. 24) According to the hearsay testimony of DEA Agent Barton at defendant's detention hearing, defendant was identified only by a Milton detective who was one of approximately seven police officers who were conducting a surveillance of a location at which it was believed defendant lived. (Tr. 21, 56) The officer who allegedly identified defendant had never seen him or a

12

photograph of him before, and the officer's observation was made on a dark night under the illumination of headlights when the vehicle which defendant was allegedly driving was making a U-turn at a high rate of speed and was simultaneously involved in a collision with a police vehicle. (Tr.56-57)  The officers were unable to get the license plate number and, despite significant efforts, were never able to locate the vehicle or to otherwise confirm that defendant was the driver. (Tr. 56; PSR, ¶27)  In fact, Maxine Hutchinson, defendant's girlfriend at the time who the government believed was the owner of the vehicle and had been with defendant at the time of the incident, informed the agents that she had not been with defendant that night and that her car had not been involved in any accident. (DEA-6, 01/27/04) Significantly, even though this testimony was introduced in support of defendant's detention, Magistrate Judge Collings did not rely upon it when he ordered defendant detained pending trial. (PSR, p. 50)

The evidence regarding this incident, therefore, is not sufficiently reliable to warrant a finding that defendant was the driver of the vehicle or that there was a substantial risk of death or serious bodily as a result of the incident.  In the event, however, that the Court is considering an enhancement under §3C1.2, defendant requests an evidentiary hearing.

## **Conclusion**

For the foregoing reasons, this Court should make the following determinations under the Guidelines:

a) There is insufficient evidence to determine that 18 pounds of marijuana was reasonably foreseeable to defendant pursuant to §1B1.3(a)(1)(B);

b) Defendant should be granted a two level downward adjustment as a minor participant pursuant to §3B1.2; and

c) No upward adjustment should be made pursuant to §3C1.2

Respectfully submitted,

/s/ *Jonathan Shapiro*
Jonathan Shapiro
BBO NO. 454220
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: July 29, 2005