UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )       No. 03-10370-DPW
     v.                     )
                            )
7. SCOTT MYERS,             )
                            )
          Defendant.        )

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, through counsel Michael J. Sullivan, United States Attorney, and Rachel E. Hershfang, Assistant United States Attorney, submits this memorandum in response to Defendant Scott Myers' ("Myers") Sentencing Memorandum ("Sent. Mem.").

In that Memorandum, Myers argues (1) that the quantity of marijuana for which he should be held responsible is not evident on the record, so he should be sentenced as if it were the smallest possible amount of marijuana; (2) that a minor role adjustment is appropriate; and (3) for a sentencing hearing, in the event the Court seeks to impose an obstruction of justice enhancement pursuant to USSG §3C1.2. As no response is necessary to the third request, the government below addresses the first and second contentions.

I.   **Relevant Facts.**

The facts are not substantially in dispute with respect to what Myers did. He was retained to, and did, make efforts to

1

collect a marijuana debt owed to codefendant Kurt Walter ("Walter"). Myers' admission that he is guilty of a marijuana conspiracy establishes his knowledge of the nature of the debt. With respect to the amount of the debt, Myers did not contest the government's representation at the Rule 11 hearing that it was "over $20,000." Furthermore, as Myers admits in his Sentencing Memorandum, there was a recorded call between him and Walter in which various sums were discussed. <u>See</u> Sent. Mem. 6 &n.1. Myers notes only one of those quantities -- "twenty-two" -- in fact, there were three. Walter mentions both "twenty-two" and "twenty-six," while Myers counters with "thirty-three." (A full copy of the transcript of the call will be available to the Court at the morning's sentencing hearing.)

**II.  Determination of Relevant Drug Weight.**

Myers argues that (1) there is no good evidence as to the amount of the debt; (2) even if a sum could be proven, there is no solid evidence either that he was aware of how much marijuana that sum represented, or of how to convert that sum into marijuana; and (3) therefore, he must be sentenced as if the marijuana quantity were the least possible under the Guidelines.

Neither the facts nor the cases dictate such an outcome. First, Myers may properly be held to a particular quantity with respect to his collection efforts. Most conservatively, that quantity is the "over $20,000" to which he did not object at

2

sentencing.  Myers' argument that he "did not admit that he was aware of the amount of the debt," Sent. Mem. 6 &n.1, inaccurately reflects the record.  Myers did not take issue with that aspect of the government's recitation of facts, though he was offered an opportunity to do so, and the Court's finding of sufficient facts was entered.  Indeed, the Court could find that the debt was as great as $26,500, based on information from the cooperating witness (see PSR ¶19), or could turn to Myers' conversation with Walter, and use an amount of $22,000 or $26,000.  In any case, however, the sum is evidently large, tens of thousands of dollars.

In cases where, as here, a defendant agrees to participate in a drug conspiracy, but may have no (provable) knowledge as to the drug quantity, he "takes his chances."  See United States v. De La Cruz, 996 F.2d 1307, 1314 (1st Cir. 1993).  Arguably, the defendant in De La Cruz knew less than Myers knew; in that case, De La Cruz was held responsible for 240 kilograms of cocaine that his co-conspirators had agreed to purchase, despite De La Cruz's limited role in driving a single van (loaded with cocaine) to a meeting site.  See id. at 1311, 1314.  The Court of Appeals rejected De La Cruz's "theory [that] no amount at all could properly be assigned to him if, as may well be the case, he never had a specific quantity in mind."  Id. at 1314.  Instead, the Court said, "the danger actually posed by the conspiracy was 240

3

kilograms, De La Cruz knew that a large quantity was involved, and -- absent special circumstances -- we think that is enough." Id. See also, United States v. Munoz, 36 F.3d 1229, 1239 (1st Cir. 1994) (where defendant participated in drug conspiracy, and was present at transaction, assertion that he did not foresee drug quantity involved in transaction no basis not to hold him responsible for actual drug quantity); United States v. Santos, 357 F.3d 136, 141 (1st Cir. 2004) (same).

Here, the cooperating witness (whose debt it was) indicated to DEA that the debt that Myers sought to collect was for 18 pounds of marijuana.  PSR ¶19 &n.1.  This represents a per-pound cost (at $26,500) of approximately $1470, which is at the high end of the range of prices noted in the case.[1]  Holding Myers responsible for 18 pounds is fair, in that it is a conservative amount of marijuana for the price; it is reasonably supported by the evidence; and it accurately reflects Myers' participation in the conspiracy.

### III. Myers' Role in the Conspiracy.

Myers contends that the PSR erred by not assigning him an adjustment for a "minor" or "minimal" role, given his limited involvement in the drug conspiracy.  The government submits that

---

[1] Myers notes that higher per-pound prices -- $3000-$4000 -- were noted in the investigation; while this is true, those prices are not applicable to the debt that Myers sought to collect.  The high prices reflect the cost of hydroponic marijuana; what was at issue here was low-grade material.  PSR ¶18.

no role adjustment is appropriate on these facts.  Although Myers was not one of the leaders of the marijuana conspiracy, he played a unique and important role.  He was, as he concedes, retained to collect a $26,500 marijuana debt.  Sent. Mem. 11.  Myers' contention that he devoted only one day (and some telephone calls) to this endeavor is belied by the record.  Myers made at least two efforts to go find the debtor.  First, he went to a pizza shop owned by the debtor's cousin.  PSR ¶23. Second, he drove around, attempting to locate the debtor, and calling the cooperating witness for directions while he drove.  PSR ¶¶23-24.  He failed only because the cooperating witness, acting at DEA's direction, sent him on a wild goose chase.  PSR ¶24.

More importantly, as noted in the Probation Officer's responses to Myers' objections to ¶¶21,23 of the PSR (PSR at 49-50), Myers was entrusted by Walter with a critical task.  Myers himself indicated that the debt-collection was "out of [Walter's] hands," PSR ¶23, and showed no sign of discontinuing his efforts until DEA deliberately made payments to protect the debtor.  See PSR at 49 (response to defendant's objection to ¶23).  Under the circumstances, a defendant who plays Myers' role -- the collector for a drug debt of thousands of dollars -- cannot be said to play a "minor" or "minimal" role.

**III. Conclusion.**

For the reasons set out above, and any adduced at

5

sentencing, the government respectfully requests that Myers be sentenced within the GSR as determined by Probation, 30-37 months.

                                        Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Rachel E. Hershfang
      RACHEL E. HERSHFANG
      Assistant U.S. Attorney

Dated: August 3, 2005