US V Scott Myers (Rev

1

1              UNITED STATES DISTRICT COURT

2              DISTRICT OF MASSACHUSETTS

3      * * * * * * * * * * * * * * * *

4    UNITED STATES
                        Plaintiff
5
        VERSUS                          CR-03-10370-DPW
6
     SCOTT MYERS
7
                        Defendant
8      * * * * * * * * * * * * * * * *

9

10          BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

11            UNITED STATES DISTRICT COURT JUDGE

12                  REVOCATION HEARING

13                  FEBRUARY 22, 2007

14   APPEARANCES:

15   DAVID TOBIN, ESQ., Assistant United States Attorney, United
     States Attorney's Office, One Courthouse Way, Suite
16   9200, Boston, Massachusetts  02210, on behalf of the
     United States
17
     JONATHAN SHAPIRO, Stern, Shapiro, Weissberg & Garin, LLP,
18   90 Canal Street, Boston, Massachusetts  02114-2022, on
     behalf of the Defendant
19
                            Courtroom No. 1 - 3rd Floor
20                          1 Courthouse Way
                            Boston, Massachusetts  02210
21                          3:55 P.M. - 4:35 P.M.

22
                 Pamela R. Owens - Official Court Reporter
23              John Joseph Moakley District Courthouse
                  1 Courthouse Way - Suite 3200
24                Boston, Massachusetts  02210

25

2

1            THE COURT:  Well, do the parties have anything

2    further that they want to offer here?

3            MR. TOBIN:  Your Honor, good afternoon.  The United

4    States has no additional evidence.  If the Court is so

US V Scott Myers (Rev

5    inclined, I'd like to be heard on the appropriate disposition,
6    but we have no additional evidence, Your Honor.
7              THE COURT:  Well, let me then ask Mr. Shapiro.  As
8    a formal matter, there is a violation.  That is, he was
9    required to participate in the inpatient treatment and observe
10   the rules and he didn't.
11             Now, whether the rules were the rules of Martinette
12   is another matter.  But he didn't as a formal matter comply
13   with that condition.  Isn't that the case?  I mean, he got
14   booted out.
15             MR. SHAPIRO:  Well, I have argued before that to
16   the extent they were technical violations, they weren't a
17   substantial violation of the conditions.  I assume you ruled
18   against me on that?
19             THE COURT:  Right.
20             MR. SHAPIRO:  And to the extent that the Court has
21   found a violation, that's true.  I would say that the violation
22   was, at best, a very, very minor violation.  And that looking
23   at this defendant, I think that there is a lot of positive
24   information.
25             THE COURT:  Well, but that's something that I would

                                                                3

1    take on disposition.  I'm really dealing separately with the
2    question of violation and then disposition here.  And I want to
3    understand whether or not there is any dispute that he had been
4    ordered to participate and observe the rules of the facility
5    and to reside there unless he was otherwise -- or reside there
6    for six months.
7              MR. SHAPIRO:  If you're asking me, I would say I
8    would rest on my prior argument.  But you've already found a
9    violation, so I don't think there is anything I can say.  The

US V Scott Myers (Rev

10    only thing I have to say is I'm not clear of whether or not --
11    I mean, there are a whole host of specific violations that were
12    in the letter from the counselor to Mr. Marshall, beginning
13    with violating the rules with respect to visitation.  There
14    were other alleged violations with respect to cars.  There were
15    some violations relating to lateness.  Mr. Myers admitted he
16    was late on a number of occasions.  And on a couple of
17    occasions, he recalled why he was late.  There was a legitimate
18    excuse.  So, I'm not clear which of these approximately seven
19    or eight specifications -- actually, I think there were eight
20    specifications that the Court has found constituted a
21    violation.
22            THE COURT:  I don't have to find any of them.
23            MR. SHAPIRO:  Excuse me?
24            THE COURT:  I don't think I have to find that any
25    of them constitute a violation.  But what I find is that the

                                                              4

1     defendant was required to leave here.  I think it's fair to say
2     that I find the circumstances capable of exploitation by both
3     sides:  By Mr. Myers, who seems to me to be somewhat
4     manipulative, looking at all times for opportunities to extend
5     beyond what is the general understandings not explicitly set
6     forth of the program, and the opportunities for arbitrary
7     termination which this set of circumstances evidences to me.
8     But I'm not making an internal -- I am not sitting to determine
9     the appropriateness of the rules that they have or the excuses
10    that can be offered.  He was required to participate in that
11    program.  He was terminated.  Consequently, he is involved in a
12    violation of the terms and conditions of supervised release.
13    There aren't those subsidiary rulings that I have to make under
14    these circumstances.

US V Scott Myers (Rev

15          I listened to the evidence and listened to

16   Mr. Robinson and frankly got a taste of what the place was like

17   and that they got frustrated with Mr. Myers.  He was always

18   pushing and always offering excuses.  And, so, they didn't want

19   to have him there anymore.  And that they didn't want to have

20   him there anymore means that he's in violation.  That's my

21   ruling on that.

22          So now we're really talking about so what do we do

23   about this.  And I think I'll hear first from the Government

24   and then I'll hear from you.

25          MR. TOBIN:  Your Honor, the Government recognizes

5

1   that although there are Guideline recommendations with regard

2   to supervised release revocations, that they are not bound nor

3   have they ever been binding upon the Court.  However, they may

4   be of some benefit to the Court.  And as I understand it, the

5   Guidelines for this type of violation with regard to this

6   defendant are 8 to 14 months.  The United States is going to

7   make two requests of the Court, two recommendations, if you

8   will.  We're going to ask that you impose a Guideline

9   recommendation at the very lowest of the applicable --

10          THE COURT:  Why would I do that?  You listened to

11   it as well as I did.

12          MR. TOBIN:  I did.

13          THE COURT:  And I understand, I think, what is

14   required of someone in the inpatient setting and that it is as

15   important for the institution to work that rules be followed

16   even if the rules aren't particularly nuanced.  But I'm going

17   to send somebody to jail because he didn't -- he brought his

18   car in on occasions that he had no excuse?

19          MR. TOBIN:  Your Honor, if I may, obviously it's

US V Scott Myers (Rev

20    your call and I certainly have to defer to the Court and I

21    would choose to do so, anyway, in this matter.  I think the

22    problem here is not that he chose to to bring his car on camp

23    or that he came back late or possibly that he even violated

24    other rules and regulations.  I think the real problem here

25    with regard to this defendant is quite simply that he refuses

6

1    to submit to the authority of the Court, United States

2    Probation, or any authority figure.  He is constantly -- and I

3    looked back to the violations in September through what we

4    experienced here when he was at the Boston house.  He is

5    constantly pushing the envelope.  He is constantly needing to

6    be in control.  He didn't like his therapist.  So, after a

7    month or so, he gets a new therapist.  He has to be in control

8    and manipulate the situation.  He has yet to say to himself or

9    to this Court, "I recognize that I have made a mistake, that I

10    have committed crimes, that I need help, and I put myself at

11    your mercy."

12           THE COURT:  Well, wait a minute.  He's already

13    committed the crime and he's already been sentenced.

14           MR. TOBIN:  He has not --

15           THE COURT:  Now we're talking about what's the

16    proper -- from my perspective --

17           MR. TOBIN:  Yes, sir.

18           THE COURT:  What we're talking about is what's the

19    proper mechanism for rehabilitation for someone like that?

20           MR. TOBIN:  Well, I --

21           THE COURT:  I think I understand the mindset of

22    Mr. Robinson and frankly the mindset of Mr. Myers.  On the

23    other hand, I don't think that there is great value in my

24    policing minor infractions.  If Mr. Myers is in the posture

US V Scott Myers (Rev

25   that he's in and doesn't want the help that's available, then

7

1   perhaps what I'll do is simply say, "All right.  He doesn't
2   have to go to residential treatment."  That was for his
3   benefit.  He doesn't -- he's got a better idea for his
4   benefit.  If he violates conditions about using, I'm going to
5   throw him in the slammer, no questions asked.  And, so, if he
6   wants to test the limits of this --
7            MR. TOBIN:  If I may, most respectfully, I think
8   the problem with that is that empowers Mr. Robinson (sic).
9            THE COURT:  Oh, it does.  It empowers him to say
10   "I'm in charge of my own life and I'm going to pay the
11   consequences."
12            MR. TOBIN:  But what are the consequence?
13            THE COURT:  The consequences are that he has
14   available here a substantial custodial time period.  I have in
15   this setting someone who rejects the opportunities that are
16   provided because he wants to play games with them.  And the
17   games are, you know, childish.
18            MR. TOBIN:  Small and petty and minor perhaps.
19            THE COURT:  Okay.  But it seems to me that
20   exercising my authoritarian powers in this context doesn't
21   advance any rehabilitative idea.
22            MR. TOBIN:  And where we disagree, Your Honor, most
23   respectfully, is that if we were to say or if the Court were to
24   say "we're not going to send you back to a residential
25   facility, we're not going to send you to jail, we're going to

8

1   continue with other types of supervision by United States
2   Probation," I think he'll walk out of here, I submit, and think

Page 6

US V Scott Myers (Rev

3  "I won.  I didn't like the place.  I didn't like them telling

4  me what to do.  I basically was able to get out of it and

5  there's no punishment.  And the Judge is once again threatening

6  potentially with jail time."

7            THE COURT:  No.  I think the difference here is

8  this:  He's on his own, you know.  I'll have supervision.  And

9  the supervision will be constant drug testing.  The resources

10  of the Court will not be devoted to servicing him in some form

11  of program.  And if he is -- as I think he may --

12  insufficiently familiar with the trouble he can get himself in,

13  he will and then he'll pay the price.  So, it's a straight-

14  forward, frankly, kind of alternative.

15            I have been inclined to encourage people to

16  continue with programs at some cost, costs to other people who

17  could participate in these programs, too, cost of the resources

18  of the Probation Office.  But I don't see a reason to do that

19  here.  Because at the end, I'm not sure I want to spend the

20  resources of the Court on Mr. Myers in some other setting.

21  Because I'm not simply -- you know, if I put him in prison for

22  eight months, which is what you're asking --

23            MR. TOBIN:  Yes, sir.

24            THE COURT:  -- then ordinarily I'd say after the

25  eight months, you'll do "X."  Then you have an inpatient

                                                          9

1  program that you're going to finish or you're going to have

2  some counseling or there's going to be some sort of sober house

3  or something like that.  I'm not sure that that makes any

4  sense.  And, so, what you're asking me to do is send him into

5  prison for eight months because of car infractions and coming

6  back late.

7            MR. TOBIN:  But we agreed to some extent, Your

Page 7

US V Scott Myers (Rev

8    Honor, in this respect:  We do not believe that the resources

9    of the Federal Government, the Judiciary, this Court and

10   Probation should be spent on this individual.  So the second --

11   I mentioned originally I was going to ask the Court to do two

12   things.  One was to give a low bottom Guideline incarceration

13   and then to have him free.  We do not believe that he is

14   amenable --

15              THE COURT:  Oh, I'm not cutting him free.

16              MR. TOBIN:  Well --

17              THE COURT:  No, you don't understand.  He's going

18   to be under supervised release.  He's going to have the

19   obligation to stay clean.  And if he doesn't stay clean, he's

20   going to jail.

21              MR. TOBIN:  I understand that.

22              THE COURT:  That's clear.  You know, it's as clear

23   as a color code.

24              MR. TOBIN:  Yes, sir.  But he seems to have come --

25   he had two problems originally.  And I came to this case

                                                              10

1    somewhat late.  He seemed to be non-compliant.  Based on what I

2    read in September, he was non-compliant and he was using drugs.

3    To his credit, at least thus far, he seemed to have come to

4    terms with the drug use.  He has been clean, if you will, had

5    negative testing.  And he's had two since the last time we were

6    here.  He may well have conquered that.  What he hasn't

7    conquered, what he hasn't come to terms with is the

8    non-compliance, the attitude, the pushing of the envelope.

9              THE COURT:  But what is that to me?  I mean, apart

10   from the idea that it's a belly-bumping exercise --

11             MR. TOBIN:  I understand your point.  And he's not

12   committing more crimes or taking drugs while in the CARE --

                              Page 8

US V Scott Myers (Rev

13          THE COURT:  If he's got an attitude, frankly I

14   don't really care.  What I do care about is whether or not he's

15   dealt with his drug problem.  That's why I put him inpatient.

16   I didn't put him in inpatient because I thought that I ought to

17   enoourage the gainful employment of more counselors.  I put him

18   in inpatient for his own good.

19          MR. TOBIN:  Well, we believe that he can no longer

20   benefit.  And I understand what you're suggesting is he doesn't

21   need more counseling, he doesn't need anymore direct

22   supervision.  I mean, he needs drug testing.  And if he messes

23   up, so be it.  Our position is that still requires time and

24   attention by United States Probation that will be better spent

25   on individuals who are more amenable to rehabilitation.


                                                            11

1           THE COURT:  Well, I go back to the earlier point

2    that you made.  I don't mean to hold you to any particular

3    language, particularly in the psych along which we all have

4    talked in this context --

5           MR. TOBIN:  Sure.

6           THE COURT:  -- because I use it, too.  But you said

7    he will be empowered to believe that he's in charge.

8           MR. TOBIN:  Yes.

9           THE COURT:  Well, really, that's what I want him to

10   think.  He's in charge.  He's in charge of his life.  He is

11   responsible for his own life.

12          MR. TOBIN:  But the best way for him to move

13   forward with his own life, in my humble opinion, is for him to

14   get -- to be somewhat humble, not because I think it's good

15   that he needs to know.  I want to make sure that he doesn't use

16   more drugs and make more crime.

17              THE COURT:  This is the language of the Lenten

                            Page 9

US V Scott Myers (Rev

18    season that you're giving me, not the language of how I ought

19    to deal with someone who is unwilling to comply with what

20    Mr. Shapiro properly says are all these kind of technical

21    violations -- not technical.  But I look at Mr. Robinson and I

22    see what that would be like.  It's like a prep. school short

23    story for the overbearing house master and the insolent

24    student.

25              MR. TOBIN:  But, Your Honor, the --

                                                                    12

1              THE COURT:  But that's not the stuff of -- as far

2    as I'm concerned, that's not the stuff of supervised release.

3              MR. TOBIN:  I understand that point and I think you

4    make the point well and I accept it.

5              The point I'm trying to make is this:  This

6    individual was ordered by the Court to undergo and to

7    participate in this program and to graduate.  He failed.  And

8    he failed not because -- in my humble opinion, the evidence is

9    that he failed because of his attitude and his desire to try to

10   cut corners, not because of the Martinette sound there, "Oh,

11   it's probably not the best one facility."  The point is he

12   failed.  There was no punishment then.  What you're suggesting,

13   most humbly, is that there's really no punishment.  So you went

14   there.  You tried to cut corners.  You did.  You didn't like it

15   there.  You got out.  The real question now is what is the

16   punishment for disregarding the orders of the Court and the

17   requirements of the Court?  It seems to me, most respectfully,

18   that there is no punishment.  I don't believe that anymore

19   resources should be wasted on him.  If he can move on with his

20   life, let him go to a YMCA and get counseling, let him do

21   whatever he wants.  I think he needs to be cut free.  We've

22   spent a lot of time and money on him.  I don't think there's

US V Scott Myers (Rev

23    anything more that Probation can do for him.  And then in

24    punishment, I think there is some added benefit to his future

25    life to go to jail and to realize "I'm in jail because of my

13

1     own fault."  But even if we assume that that's the language of

2     atonement and all of that and put that aside, the man looked at

3     the Court and he refused to be totally aligned and to follow

4     the dictates of the reasonable orders of the Court to go and to

5     do this.  I have one Judge who once said to an individual who

6     left one of these facilities because he wouldn't clean a

7     toilet, I think the Judge looked at him and said, "I was in the

8     military.  When they told me to do things, I did things."  That

9     should be his attitude.  It's not.

10           THE COURT:  But nobody, I suspect, sent the Judge

11    to jail for eight months for --

12           MR. TOBIN:  No, no.  They didn't send him to jail

13    at all.  The point I'm making is the Guidelines are eight

14    months.  We don't think that he can be helped.  We think that

15    it's a waste of time to put him back into Probation.  And I

16    think he should be on his own.  The eight months or some period

17    of incarceration is worthy because of the fact that he

18    disregarded the edicts or the dictates or the requirements or

19    orders of the Court.  But I certainly understand your point and

20    we'll both need help.

21           THE COURT:  All right.  I understand the

22    Government's view.  Mr. Shapiro?

23           MR. SHAPIRO:  I'll be brief, Your Honor.  But I

24    think that the Government's position is Alice in Wonderland.

25    Here we're dealing with -- the issue here is drugs are what got

14

1     Mr. Myers into trouble with the law initially.  He was addicted

US V Scott Myers (Rev

2    for years and years during which time he committed crimes and

3    that's one of the crimes that brought him before you.  He was

4    on supervised release.  And I think, as you said, the goal of

5    supervised released is to prevent him from getting involved in

6    the kind of problem that led him to break the law in the past.

7            Now, when he was here in September, he had gotten

8    back on drugs and that was his problem and he needed to deal

9    with that problem.  And the Court did -- what I think the Court

10   appropriately did was to order him to go into a program where

11   he was going to deal with that issue, which he did.  And since

12   that time, he's been drug-free.  Yes, he did violate some of

13   the rules and regulations at this facility.  But for the

14   Government now to say we're going to punish him for violating

15   these rules by sending him to prison for eight months and then

16   we're just going to cut him free makes no sense at all.  I

17   think it's appropriate to keep him under the gun with respect

18   to drugs and I think at this point he will be the first one to

19   say, yeah, if he does use drugs again, he knows he's going to

20   go to prison.  And that would be appropriate because that's the

21   trigger for future criminal conduct which is the purpose of

22   supervised release to prevent.

23           So, I would recommend that he remain on supervised

24   release as the Court has indicated it intends to do subject to

25   whatever drug testing the Court chooses to impose.  Prior to

                                                              15

1    the hearing the last time, Mr. Myers had gone to the CARE

2    program at the Court and indicated that he wished to enroll in

3    that.  And I think he was at that time interviewed by the

4    Federal Defender.  I think it was Cathy Byrne who did it.  But

5    because of the pendency of this proceeding, that wasn't --

6    there was no followup.  I think it would be reasonable to allow

                            Page 12

US V Scott Myers (Rev

7   him to live at home with Ms. Sadler at the address that he has
8   lived at and, as a requirement, impose or require that he
9   participate in the CARE program which I believe requires
10  testing as well as --
11          THE COURT:  Well, I'm not sure that I think even
12  that is appropriate here.  You know, I hear from Probation with
13  what their view is, a limited program.  It's a program for
14  people who are motivated and understand that these marginal
15  kinds of requirements are necessary in the character formation.
16  And that doesn't seem to be Mr. Myers to me.  Mr. Myers seems
17  to me to be someone who wants to do it his way.  And if he
18  does, then he's going to be riding bare-back if that's who he
19  wants involved.  And if he falls off the horse, he's going to
20  get hurt.  But that, it seems to me, is one way of dealing with
21  it.  I don't -- I mean, I should hear from Probation on the
22  character and how it would work for someone like Mr. Myers.
23  But how one would formulate that or even whether I would be the
24  person to make that kind of -- apart from recommendation or
25  direction.

                                                            16

1          PROBATION OFFICER:  Well, Your Honor, I think you
2   could make that decision if you chose.  I wouldn't make that
3   decision.  I would refer his case to the Treatment Services
4   Unit for consideration into the program.  I would just say from
5   my experience that Mr. Myers would be a forfeit for the program
6   given the extensive requirements, particularly in phase one,
7   where you're reporting three days a week and, you know, this on
8   time and different factors that Mr. Myers in the past hasn't
9   always exhibited an ability or a willingness to do so.
10  However, my experience with Mr. Myers really wouldn't have, I
11  don't think, much to say as to his acceptance into the

US V Scott Myers (Rev

12   program.  I would have that be Supervisor John Hurdick's

13   decision and a few other members of that team to make a final

14   decision.  But it doesn't seem like a very good match.

15          THE COURT:  Let me understand the time period that

16   I have available to him here.  Am I right that there are 35

17   months remaining --

18          PROBATION OFFICER:  Yes, Your Honor.

19          THE COURT:  -- to be imposed for purposes of

20   supervised release?

21          PROBATION OFFICER:  Given the one-month sentence at

22   the revocation hearing, yes.  So, it would be 35 months.

23          THE COURT:  So, for a period of 35 months, he's on

24   his own vulnerable to getting himself in trouble by means of

25   using drugs or getting involved in some other violation of

17

1   federal, state or local crime or any of the other conditions

2   other than the indicated conditions with a potential of me

3   imposing a Guidelines sentence if there is a violation and then

4   he has to go through it again.

5          Let's assume he commits a drug violation.  Of

6   course I'll look at it in its own context.  But I would be

7   inclined at this point to say it should be a high end

8   violation.  So, that will be 14 months in prison.

9   And he comes out and he has another 21 months that's available

10   for purpose of supervised release and we continue to go through

11   that process in which Mr. Myers can interrupt successful

12   completion of supervised release.  Everytime he violates, he

13   gets himself put in jail.

14          All right.  So, Mr. Myers, I'll hear from you.

15          MR. MYERS:  Thank you for hearing me, Your Honor.

16   I'm sorry to come to the Court, especially when the Court had

US V Scott Myers (Rev

17    extended its help to me.

18           I did have problems at the program initially over a
19    biography I wrote and I didn't want it to be circulated the way
20    that they intended to.  And I asked that and that was the
21    reason why I changed that with my case worker.

22           I am responsible for being late.  I do have valid
23    reasons why I was late.  But still, if you ask me to go to the
24    store and get something and I agree to it, I should come back
25    rain, sleet or snow.  And I didn't.

                                                              18

1            I do need help.  Yes.  Right now, I'm in NA.  I
2     have my sober groups I attend and my sober support.

3            Do I feel I should be in prison?  I mean, to get
4     every -- you know, not to tell anybody, "Hey, look, I don't
5     want to bother you anymore."  But come on, you guys have looked
6     out for me because I could have really been in some stuff with
7     -- I'm talking prior to even these violations.  I do have a
8     drug problem.  That problem is with me every day.  And I need
9     to fight the drug problem.  I do suffer from it.  But with my
10    life, I can't.  I know that I'm not coming back if I go out,
11    meaning using.  And to have Probation supervise me for this
12    time, I need that.  I need to be on my color code.

13           THE COURT:  But when -- on your own terms?

14           MR. MYERS:  Excuse me?

15           THE COURT:  On your own terms?  You know, whenever
16    you feel like you like the supervision, you go along with it
17    and when you don't like it, you don't?

18           MR. MYERS:  No, a contract is you hold your end.
19    And I've been questionable about holding my end.  But I'm
20    serious.  I don't want to go.  And there was a lot of things
21    that the Steven Miller House helped me with.  So it's not like

US V Scott Myers (Rev

22    I went there and played around.  I went there.  I did do

23    chores.  He spoke of atonement.  I did my chores.  They didn't

24    speak of me preventing like 11 other people from relapsing,

25    helping me into detox. and sharing my experience, strength and

19

1     hope with those gentlemen in order for them to continue on and

2     which I do still to this day.  Those things weren't spoke

3     about.  It was a little problem between me and that gentleman

4     and he helped me.  Because I don't care what comes at me.  It's

5     my job to see a positive.  Where I'm at right now is I need

6     supervision.  I'm asking this Court to allow me -- just as the

7     Court did say, if I violate, I'm going to jail.  And you're not

8     going to be slapping me on the wrist because you see that I'm

9     playing games.  You're not playing them.

10              THE COURT:  Well, you say you want to go to some

11    other program?

12              MR. MYERS:  I'm saying, Your Honor, I tried.  I

13    would like to go into the CARE program.  I'd like to -- excuse

14    me?

15              THE COURT:  You know, I have to tell you I know a

16    little about the CARE program.  And it doesn't seem to be a fit

17    with your personality to be perfectly candid.

18              MR. MYERS:  I spoke with, Your Honor, Sorokin.  I

19    wrote him a letter.  He had suggested that I come in.  I had

20    known Mr. Sorokin before he became Honorable Sorokin.  And he

21    thought it would be the best fit for me.  And then I wrote him

22    a letter and told him when I was available to come to camp.  I

23    told him I would come and I did come.  I'll go to the program

24    to try to get in.  If this Court is not inclined to allow me to

25    go to the program, I do need some counseling.  Please allow me

Page 16

US V Scott Myers (Rev

20

1   to go back to my AdCare counselor so that I can continue having

2   some support system.  I don't want to ride bare-back, as you

3   say.  I want to do this.  And I don't want to come back before

4   the Court wasting this Court's time over stuff, especially when

5   you have went -- and when you handle something once, you don't

6   have to do it again.  I'm clean.  I just need a little help and

7   I'm not here to play with the Court.

8           THE COURT:  What does that mean?  What is going

9   back to your AdCare counselor?  What does that mean from

10  Probation's point of view?

11          PROBATION OFFICER:  That's out-patient treatment

12  services, typically once a week, whether it's a group or

13  individual treatment sessions.  Unfortunately, Mr. Myers did

14  have, I think, a fairly good relationship with his previous

15  counselor who is no longer with the agency.  And, so, I don't

16  know.  I'm pretty sure you're aware of that --

17          THE COURT:  Yes.

18          PROBATION OFFICER:  -- but just to let you know

19  that he's no longer there.  But that's what AdCare is.  It's

20  more like once a week, an hour session.  But then there's

21  attendance issues and things that go with that.  But that's

22  what the program is.

23          THE COURT:  What is the cost involved?

24          PROBATION OFFICER:  Well, that's something that,

25  depending on insurance -- if Mr. Myers has insurance, say Mass.

21

1   Health, Mass. Health would pay for it.  So it wouldn't cost

2   Probation Department anything.  Otherwise, Mr. Myers is

3   employed.  A co-payment -- piece-group sessions are certainly

4   cheaper than individual sessions.  But again, that can also be

Page 17

US V Scott Myers (Rev

5    based on contributions from Mr. Myers to pay for the services.

6        MR. TOBIN:  Your Honor, if I may, the only problem

7    -- respectfully, the only potential problem with that is we're

8    back to where we were before which is let's say he has an

9    appointment with his counselor on Tuesday.  He misses the

10   appointment.  Then --

11       THE COURT:  Well, no.  You've identified -- I think

12   you are going in the direction that I have in mind.  Does

13   AdCare terminate people from the program?

14       PROBATION OFFICER:  AdCare wouldn't terminate.

15   They would send us -- they'd either call me directly or send me

16   a notice of a missed session like they did previously.

17       THE COURT:  Well, let me look at it from another

18   perspective.  Can Mr. Myers on his own choose to go to AdCare

19   without the supervision of Probation?  Is there any reason why

20   he can't do that?

21       PROBATION OFFICER:  I wouldn't think that -- I

22   can't see any reason why he couldn't do that.

23       MR. MYERS:  I don't know of that relationship.  I

24   really don't.  I know that the counselor I was working with now

25   is on the Cape.  And I was going to make efforts to see him at

                                                          22

1    his position there and see if I could deal with him there.  If

2    not, I was trying to get into the program here at AdCare which

3    is on Beacon Street in Boston because he's no longer there.  I

4    did start building a relationship with a new counselor.  And I

5    don't know if the Court orders it.  If the Court doesn't order

6    it, can I get in myself?  I don't know about that.

7        THE COURT:  You say that someone can?

8        PROBATION OFFICER:  Yes.  My understanding is they

9    have other patients or clients outside of the federal clients

Page 18

US V Scott Myers (Rev

10    with our contract.  So, I don't -- I haven't worked with

11    anybody specifically that has done that, but I don't see why

12    that wouldn't be possible.

13            THE COURT:  Well, I guess, Mr. Myers, I'm leaving

14    it up to you.  You find your counseling.  You find the

15    program.  It's up to you.  We've gone through a variety of

16    different experiences here.  you can apply for the CARE

17    program.  I'm not making it a condition of supervised release.

18    I think it's a good idea.  But I thought that the Steven Miller

19    House was a good idea, irrespective of the kind of aggressive

20    -- passive/aggressive approach of Mr. Robinson.  But you've

21    made some choices and the choices are to test the envelope.

22    And I am of the view that I'm simply not going to engage the

23    Probation Office directly through an order of my own in a

24    further kind of close supervision.  You've made your choice.

25    You know what's best.  And as a consequence, you will face real

23

1    difficulties if you get yourself in trouble again.  It will

2    mean jail.  If you get involved in another crime, you use, and

3    they find out that you're using, I'm going to put you in jail.

4    And it's going to be a Guideline sentence.  Now you know what

5    the Guidelines are:  Eight to fifteen months here.  And I

6    assume it will be the same Guideline for a violation.

7            PROBATION OFFICER:  It would, Your Honor.

8            THE COURT:  So that's what's going to happen.

9            Now, my own view is that you would do well to find

10    your program.  But it's not going to be ordered as part of

11    supervised release here.  I've done it.  And you have your own

12    view.  So, I'm taking you out.  I am revoking.  I am taking

13    out the condition of inpatient treatment and residence at a

14    six-month sober house approved by the Probation Office.  I am

Page 19

US V Scott Myers (Rev

15  leaving in place all of the other conditions.  And you have got

16  a warning.  And the warning is there won't be a question if you

17  come back here violating either of those major conditions for

18  me -- not technical conditions, major conditions for me --

19  using or getting yourself involved in another crime.  That will

20  be virtually automatic jail time.  Of course I'll consider all

21  of the sets of circumstances, but you should know what the

22  likely consequence is going to be.  And now you do.  But you

23  can't say "I'd like to have help" and then reject the help.

24  You can't say, "I'll do it my way" and then say "Well, I'd like

25  someone else to pull me out on this."  Not at this stage.

24

1           So, for those reasons, I do revoke and reimpose

2  supervised release to 35 months.  It's a long time.  And you

3  better get your life in order on your schedule in your way to

4  meet these serious obligations.

5           Now, are there other issues that -- I'm sorry --

6  the Government or Probation want to raise with me here?

7           MR. TOBIN:  No, Your Honor.  I think that covers it

8  all.  Thank you.

9           THE COURT:  Okay.  You should understand you have a

10  right of appeal and you'll want to consider whether or not to

11  exercise that right of appeal.  But now you have nobody else to

12  blame, Mr. Myers, if something goes wrong.

13           MR. MYERS:  Yes, Your Honor.

14           THE COURT:  All right.

15           MR. MYERS:  Thank you.

16           THE COURT:  We'll be in recess.

17           MR. TOBIN:  Thank you, Your Honor.

18                RECESSED AT 4:35 P.M.

19                CERTIFICATION

```
                         US V Scott Myers (Rev
20            I certify that the foregoing is a correct

21    transcript of the record of proceedings in the above-entitled

22    matter to the best of my skill and ability.

23    /S/_____    _____

24    Pamela R. Owens                    Date

25    Official Court Reporter
```