US v Scott Myers (Rev) 092706

                                                                    1

1                UNITED STATES DISTRICT COURT

2                  DISTRICT OF MASSACHUSETTS

3    * * * * * * * * * * * * * * * *

4    UNITED STATES
                              Plaintiff
5
         VERSUS                                  CR-03-10370-DPW
6
     SCOTT MYERS
7
                              Defendant
8    * * * * * * * * * * * * * * * *

9

10         BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

11            UNITED STATES DISTRICT COURT JUDGE

12                    REVOCATION HEARING

13                   SEPTEMBER 27, 2006

14   APPEARANCES:

15   RACHEL HERSHFANG, ESQ., Assistant United States Attorney,
     United States Attorney's Office, One Courthouse Way, Suite
16   9200, Boston, Massachusetts  02210, on behalf of the
     United States
17
     PAGE KELLEY, ESQ., Federal Defender's Office, 408 Atlantic
18   Avenue, 3rd Floor, Boston, Massachusetts  02110, on behalf
     of the Defendant
19
     PROBATION OFFICER:  Mr. Marshall
20
                                   Courtroom No. 1 - 3rd Floor
21                                 1 Courthouse Way
                                   Boston, Massachusetts  02210
22                                 11:50 A.M. - 12:15 P.M.

23
             Pamela R. Owens - Official Court Reporter
24           John Joseph Moakley District Courthouse
                  1 Courthouse Way - Suite 3200
25                Boston, Massachusetts  02210


                                                                    2

1             THE COURT:  Well, Ms. Kelley, where do we stand?

2             MS. KELLEY:  Well, I think that the three of us --

3    Ms. Hershfang, Mr. Marshall and myself and I've also spoken

4    with Mr. Myers about this -- have agreed that a good solid
                            Page 1

US V Scott Myers (Rev) 092706

5   course of treatment for him would be to go to Gosnold.  And I
6   believe Mr. Marshall can address for the Court the details of
7   his office and the availability of a bed there.  And Mr. Myers
8   is in agreement with this.  He's anxious to go.  He believes
9   that that's the best thing for him.
10              I have also talked with Nichelle Sadler, who is
11  here again in support of him.  And she also thinks that this
12  would be a really good opportunity for him.  And I think
13  incidentally he understands it's very expensive.  It's an
14  opportunity that not a lot of people would get.  It's his
15  second inpatient, which I think for Probation now is somewhat
16  unusual.  And he really wanted to make the best of that
17  opportunity and take advantage of it.  I would just -- yes?
18              THE COURT:  Go ahead.
19              MS. KELLEY:  I would also just like to stress, you
20  know, he was released from the last program in February.  He
21  was testing positive then not until August.  He did have some
22  months of success after the last program.  After court last
23  time, I spoke with Ms. Sadler who informed me that sort of as a
24  family, they had a lot of really stressful developments which
25  Mr. Myers had not made me aware of.  But Ms. Sadler had been

                                                                 3

1   diagnosed with a very serious chronic illness.  Their 13-year-
2   old son was diagnosed with Type I Diabetes during that time and
3   she has explained to me that this really, she thought,
4   contributed to the stress on him and his relapse.  So, I think
5   the only disagreement is that Probation is recommending to the
6   Court that he serve some time in Plymouth before he goes to
7   Gosnold.  And I would just urge you to be lenient and allow him
8   to go on to Gosnold.  He has been in Plymouth since he turned
9   himself in.  And I don't exactly know the point of that.  He

US V Scott Myers (Rev) 092706

10  understands now the seriousness of his non-compliance, that he
11  simply has to comply with every requirement of probation.  He
12  can't take it upon himself to fashion his own plan for
13  himself.  And, you know, I've also stressed to him this is not
14  just Probation telling him what to do.  It's a court order and
15  he needs to submit to the authority of the Court.  And I think
16  he understands that and is ready to take the next step.
17           Thank you.
18           THE COURT:  Ms. Hershfang?
19           MS. HERSHFANG:  Your Honor, I agree with
20  Ms. Kelley's characterization of the parties' agreements and
21  also disagreements.  I concur with Mr. Marshall's request that
22  Mr. Myers do some time before he goes to Gosnold.
23           THE COURT:  Some time?
24           MS. HERSHFANG:  Four months, Your Honor.  And I'd
25  be happy to have Mr. Marshall speak to that directly because I

                                                                    4

1   think he's the one with the better knowledge of Mr. Myers.
2            THE COURT:  Just so I understand, he's been in
3   Plymouth how long now?
4            PROBATION OFFICER (MR. MARSHALL):  He was taken
5   into custody last week, the 20th.
6            THE COURT:  So essentially seven days?
7            PROBATION OFFICER (MR. MARSHALL):  Yes.
8            Your Honor, just after the last hearing, I did have
9   the opportunity to consult with both attorneys, Mr. Myers'
10  current treatment provider at Adcare, Gosnold, my supervisor,
11  who is kind of a founding member of the CARE program, in order
12  to come back here today and be prepared to speak to you.
13           I think there's a couple -- two major issues going
14  on here.  First obviously is Mr. Myers' drug abuse history and

US V Scott Myers (Rev) 092706

15  recent relapse.  But there's also the issue of non-compliant
16  actions and decisions that Mr. Myers has made during the course
17  of his supervision.  And the Probation Department feels
18  strongly that you can't address one without addressing the
19  other.  And that is why we are still seeking a period of
20  incarceration, to address non-compliance not directly related
21  to drug abuse.  Mr. Myers is a very smart individual.  He has
22  known from day one what he needs to do, but he plays the game
23  unfortunately and manipulates and is not always truthful to the
24  Probation Department.  And, so, those are some of the issues
25  which, of course, are outlined in the report.

5

1             However, as far as the treatment aspect, we have
2   talked with Gosnold.  They would be able to get him into
3   treatment as soon as really the Court wishes, whether it's
4   after a period of incarceration or, you know, within a few days
5   of today.  We have done that before where someone is released
6   and they're picked up by Gosnold staff and brought right to the
7   facility.  So that certainly is a possibility.  We would be
8   able to pay for that for 90 days for the patient.  And then a
9   standard course of discharge from Gosnold is that they will
10  recommend a sober house placement.  The length usually varies a
11  little bit.  But the Probation Department would feel that a
12  six-month placement in an approved sober house as opposed to,
13  say, the Coolidge House would be an appropriate kind of
14  continuation of his treatment plan and then also assess
15  Mr. Myers for his participation in CARE.  Of course, that's a
16  voluntary program.  All of these services we're talking about
17  were offered to Mr. Myers in August which he refused, but
18  certainly they are still on the table today.
19            THE COURT:  Let me ask:  With respect to the

US v Scott Myers (Rev) 092706

20   accounting, Probation will pay for 90 days.  Is that the
21   customary time period for inpatient?
22              PROBATION OFFICER (MR. MARSHALL):  It's been
23   extended.  It was previously 60 days.  I think originally it
24   was 90 days and then it got cut to 60 days.  Now it's back to
25   90 days.  But that is the standard period.

                                                                  6

1               THE COURT:  And that's what Gosnold would consider
2    to be the appropriate duration --
3               PROBATION OFFICER:  Yes.
4               THE COURT:   -- outside duration?
5               With respect to his AdCare counselor --
6               PROBATION OFFICER:  Yes.
7               THE COURT:   -- what does she have to say about the
8    interruption of his treatment for a period of time when he is
9    down at Plymouth and consequently isn't going to be treated?
10              PROBATION OFFICER:  I just spoke with Susie Howard,
11   actually today.  She only had the opportunity to meet with
12   Mr. Myers on one occasion, but she was -- that was because his
13   previous therapist left the agency.  She told me -- she's a
14   treatment provider.  So, she doesn't -- it's not her typical
15   position to recommend any period of incarceration.  And, so,
16   she's really more focused on the treatment aspects of it.
17              THE COURT:  Well, let me just understand how the
18   AdCare treatment would coincide with -- if at all -- the
19   Gosnold treatment.
20              PROBATION OFFICER:  It wouldn't at this point.  And
21   AdCare wouldn't return -- wouldn't come back into play until
22   after Gosnold.  But she just had the opportunity to see him in
23   August for that one occasion, but I still thought for him to
24   touch base with her about this.  But then after discharge from

US v Scott Myers (Rev) 092706

25   Gosnold, there would need to be an after care plan and that's

7

1   when AdCare would come back into play.
2         THE COURT:  All right.  Well, before I hear from
3   Mr. Myers, I want to be certain that Mr. Myers does, in fact,
4   stipulate that the violations that are set forth in the
5   violation report are true, that he did engage in the violations
6   as described in the violation report.
7         MS. KELLEY:  Well, if I just may, if you look on
8   page three of the report, Roman numeral II --
9         THE COURT:  Right.
10        MR. KELLEY:  -- I would just point out, for
11   example, special condition number one, at AdCare, you see there
12   is an April date.  He was completely compliant during that time
13   period.  It was not until August that he used and relapsed and
14   began this cycle where he was trying to get himself into
15   Faulkner.
16        THE COURT:  If there is a dispute about it, I want
17   to know --
18        MS. KELLEY:  Well, he tells --
19        THE COURT:  -- just a moment --
20        MS. KELLEY:  Yes.
21        THE COURT: -- what the AdCare reference is to
22   failure to attend individual sessions.
23        MS. KELLEY:  He did fail to attend that session on
24   April 26th, but it was rescheduled.  It wasn't as if he just
25   didn't go and didn't call and didn't reschedule that.  I was

8

1   not able to get his counselor on the phone as I think
2   Mr. Marshall says he was.  So, I'm unable to report to the

                          US v Scott Myers (Rev) 092706
3    Court about his history there.
4            THE COURT:  Well, as far as I understand, she was
5    not there.  She was attending to him at the time.
6            MS. KELLEY:  That's correct.
7            THE COURT:  But what's the story on the April 26th
8    failure to report?  Do you have some report from AdCare or
9    something like that?
10           PROBATION OFFICER:  I don't have it on hand, Your
11   Honor.  We did receive a fax incident report.  I did speak with
12   his therapist after that session.  Mr. Myers was a no call/no
13   show up for that appointment.  He did have contact with his
14   therapist thereafter and they scheduled another session.  But
15   he was a no call/no show for that session.
16           I would also like to point out that in July he
17   missed another session.  They are talking about August as when
18   the non-compliance began.  But he missed a drug test in July
19   and admitted to myself and the Probation Supervisor that he
20   started using in July.  So the time frames there do coincide
21   with non-compliance.
22           THE COURT:  Okay.
23           MS. KELLEY:  Well, I would just like to say on
24   behalf of Mr. Myers neither one of us thinks that it's really
25   productive to go point by point through these dates.  I mean,

                                                                  9

1    there were times when --
2            THE COURT:  Well, you know, maybe it's not and then
3    maybe it is.  My principal focus is going forward.  But part of
4    going forward is a willingness to acknowledge what he decides
5    is, in fact, the case of non-compliance in the past.  This kind
6    of "he didn't show up, but he got another appointment" strikes
7    me as carving it kind of thin.  If he didn't show up, he didn't

US v Scott Myers (Rev) 092706

8  show up.  He's supposed to show up.  He's supposed to tell them
9  ahead of time.  If he didn't do it, then that, it seems to me,
10 is a violation.  Now, is it the most important violation in the
11 world?  No.  But it's a violation.  And if he wants to trim on
12 what the violations are, well, we'll go through it step by step
13 and I'll decide whether or not there's a violation that's been
14 established here.  I'm not forcing him to acknowledge something
15 that isn't true.  On the other hand, it is, I think, part of
16 the resolution of the problem for him to recognize problems if
17 they exist.  And it suggests an unwillingness to address the
18 problem if he maintains highly technical and ultimately
19 ineffective defensive postures with respect to this or efforts
20 to mitigate the seriousness of this.  This is all a bundle.
21 And the bundle is that he stopped responding to -- as I read
22 this, stopped responding to his obligatons as early as April
23 when he left Coca-Cola; that he decided to set up his own
24 schedule at AdCare, but didn't tell anybody ahead of time; and
25 then they started picking up drug usage.  And that appears to

10

1  be July -- not August, but July.  Now, if he wants to tell me
2  that everything fell apart in August, I'll resolve the issue as
3  a matter of fact.  They may be explanations, but they're not
4  excuses here.
5          So, I'm back to the question:  Does he dispute any
6  of the allegations that are made in the violation report?
7          MS. KELLEY:  No, he does not.
8          THE COURT:  All right.  So I'll hear from you,
9  Mr. Myers, if there's anything that you want to say.
10         MR. MYERS:  Yes, Your Honor.
11         My relapse happened before July.  I didn't
12 technically use before July.  My issues came and I was going

US V Scott Myers (Rev) 092706

13  through a lot with the adjustment of Mr. Fred Wysanski, which
14  was my therapist there.  He left and I went to Ms. Susie
15  Howard.  And I didn't adequately address it then.  I'm talking
16  months before.  We're talking somewhere around May.  And I
17  needed some help then.  I didn't settle in and get it and it
18  led to this here.  I am responsible for not showing up, trying
19  to circumvent and that's what I did.  I do apologize to this
20  Court and to Probation for that inconvenience.  When
21  Mr. Marshall -- he is lodging allegations that are true.  He
22  was trying to help me and has been and I acknowledge that and I
23  accept it.  The CARE program was something that I was
24  interested in and still is something I am interested in.  I'm
25  here now in Plymouth hoping that the Court sees that, you know,

                                                                11

1   the addiction is a disease.  I'm not running around, you know,
2   doing crime.  Yes, I have to purchase the drugs.  I do believe
3   that's a crime.  And that in itself constitutes problems and I
4   do apologize to the Court and Probation for the same thing and
5   the U.S. Attorney's Office and my attorney and my family.
6   Please excuse all of that.  I do want help and I don't want to
7   run around determining what help is.  I need help and I want
8   the help that the Court can give when the Court can give it.
9               And I thank you for allowing me to address this.  I
10  am guilty of these violations.
11              THE COURT:  All right.  Thank you.
12              MR. MYERS:  Thank you, Your Honor.
13              THE COURT:  Well, of course, we're dealing with a
14  violation here that has a range of imprisonment of 8 to 14
15  months under the Guidelines.  Those are advisory Guidelines and
16  have been since the inception.  But I think there is some force
17  for what Probation says, that there has to be some punitive

US v Scott Myers (Rev) 092706

18    dimension to this to make clear that these violations
19    constitute violations of the law and to assure a lasting
20    recognition of the obligation to comply.
21             So, I'm going to impose one month in Plymouth,
22    including the seven days of time served to date. Do I think
23    that's productive in terms of going forward in treatment?
24    Actually, yes. Because you have to understand, Mr. Myers, that
25    when you engage in these violations, there is going to be

                                                                    12

1     punishment. There exists a stick. And what I have done, I
2     think, if I read this correctly, is that the period of
3     supervised release can extend 35 months. Is that right?
4              PROBATION OFFICER: That's correct. Let me make
5     sure I am speaking the facts. He can technically do a 60-month
6     period minus any time served.
7              THE COURT: And there would be available for
8     punishment in the future another 35 months?
9              PROBATION OFFICER: I believe that 60 months is the
10    maximum. Sixty months is the maximum term allowable under the
11    statute.
12             THE COURT: As I read the Initial Appearance Bail
13    Report, the report is that maximum imprisonment upon revocation
14    is 36 months.
15             PROBATION OFFICER: Oh, for imprisonment, yes.
16    That's correct.
17             THE COURT: Okay. So, with the one month taken off
18    here, that will leave 35 months remaining.
19             PROBATION OFFICER: Sorry, Your Honor. I was
20    thinking of supervised release. Yes, that's correct.
21             THE COURT: Okay. Now, with respect to supervised
22    release, do you have a time period that you would recommend?

                        US v Scott Myers (Rev) 092706
23    we have done three years before.
24             PROBATION OFFICER:  Well, Your Honor, my thoughts
25    about supervised release are somewhat impacted by CARE in that

                                                                    13

 1    he would have an ability to earn 12 months off of that.  And I
 2    think that's an appropriate carrot for that program because
 3    it's a lot of hard work.  So, my initial thought was 24 months,
 4    but then that could be cut down to only a year and I don't
 5    think that's enough.  So, I think I would lean more towards
 6    making it an initial 36 months and then cutting it down.  If
 7    he's successful with the program, then we're still looking at
 8    still two years of supervision upon release.
 9             THE COURT:  All right.  That seems appropriate to
10    me.  That is, I will impose -- having revoked, I will impose
11    one month, including the time served to date to be followed by
12    three years of supervised release, the first 90 days to be
13    served -- to be spent in inpatient at Gosnold, to be followed
14    by six months in a sober house that is satisfactory to the
15    Probation Office.  The original terms and conditions of
16    supervised release will remain in place subject to that
17    modification and refocused on Gosnold and the sober house.
18             I will, in addition, direct that the defendant make
19    a good faith effort to obtain employment and that good faith
20    effort to include documenting in the absence of employment
21    contact with three potential employers every week for
22    Probation.  It's not going to be enough to say "I can't get
23    employment."  You've got to show that you have gone somewhere
24    to see somebody about getting a job.
25             I share Mr. Marshall's view that you're a very

                                                                    14

 1    bright person, maybe too bright for your own good sometimes.

US V Scott Myers (Rev) 092706

2  And someone with your capacities can get a job and serve your
3  family that way.  And that is, it seems to me, one of the best
4  ways to avoid getting yourself into more trouble here.
5            I have imposed, as I said, 30 days to emphasize
6  that there is a punitive component to this.  This is not just
7  come in and let the Judge try to get Probation to get you in
8  another program.  The next time, if there is a next time, will
9  involve a much more extended period of imprisonment.  As you
10 know, I can impose as much as 35 months of imprisonment.  And
11 I'll give very careful consideration to that.  I hope I don't
12 have to deal with that again, Mr. Myers.  I hope that your
13 expressed desire to get on with things will work out.
14 Certainly, the program is all that we can hope for here, except
15 for one thing:  That you take it to heart and let it work for
16 you and work with it rather than fighting it in little ways and
17 big ways the way in which you have done to date.
18           You should understand you have a right of appeal
19 and you'll want to discuss with Ms. Kelley the advisability of
20 exercising that right.
21           MS. KELLEY:  If I may ask the Court for one
22 consideration on the sentence.  With regard to the six months
23 in a sober house, in my experience with Gosnold, there are
24 times when an appropriate sober house can't be found or the
25 counselor who is working with the person is recommending

                                                              15

1  something different.  And I'd just like the possibility to be
2  kept open for us to come back to the Court and request a
3  modification.
4            THE COURT:  I don't think -- at least as I can
5  see it -- that it would be necessary to come back to the
6  Court.  It is a matter to be brought to Probation for their

US v Scott Myers (Rev) 092706

7   approval here.
8             MS. KELLEY:  Okay.  Thank you.
9             THE COURT:  What we're looking at is something that
10  is the equivalent of a sober house and Probation, I'm sure,
11  will be guided by the recommendations of the people at
12  Gosnold.
13            MS. KELLEY:  Okay.
14            THE COURT:  So, if not a sober house as a sober
15  house, it's the therapeutic equivalent of that as defined by
16  Probation.
17            MS. KELLEY:  Okay.  Thank you.
18            THE COURT:  I think that's sufficient to provide
19  the authority where it properly belongs, which is with
20  Probation making adjustments to the overall scope of what I had
21  in mind for supervised release.
22            MS. KELLEY:  Okay.
23            THE COURT:  Okay.  Anything further?
24            MS. KELLEY:  No.  Thank you.
25            THE COURT:  All right.  Then we'll be in recess.

                                                              16
1   Thank you.
2                    RECESSED AT 12:15 P.M.
3
4                        CERTIFICATION
5            I certify that the foregoing is a correct
6   transcript of the record of proceedings in the above-entitled
7   matter to the best of my skill and ability.
8
9   /S/_____     _____
10  Pamela R. Owens                         Date
11  Official Court Reporter

```
                  US V Scott Myers (Rev) 092706
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```